No. 25,164.

The Fairfax Drainage District of Wyandotte County, *Appellee,*
v. Henry Reimer, *Appellant.*

SYLLABUS BY THE COURT.

Drainage District—*Improvement Bonds Valid—General Obligations of Entire
District.* Improvement bonds issued by a drainage district in pursuance of
the provisions of sections 3920, 3921, 3922 and 3923, of the General Statutes
of 1915, are general obligations of the district for which the district is pri-
marily liable and which it is required to pay when due, whether or not the
special assessments levied on the property in the district have been col-
lected.

Appeal from Wyandotte district court, division No. 3, William H. Mc-
Camish, judge. Opinion filed October 6, 1923. Affirmed.

*W. C. Rickel,* of Kansas City, for the appellant.

*Judson S. West, Arthur J. Stanley,* and *Guy E. Stanley,* all of Kansas City,
for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This proceeding was brought to obtain a de-
claratory judgment as to whether or not bonds, issued by a drainage
district for the building of levees to protect the lands and property
therein from the overflow of adjacent streams, are obligations of the
entire district or only payable out of the funds that may be paid on
special assessments against the lands benefited by the improvement.

The district was organized as provided in the drainage act.
(Laws of 1905, ch. 215, and the amendments thereto.) The district
board found and declared that the public health and convenience of
the public made the construction of levees, drainage ditches and
pumping stations necessary and based on an engineer's report made
an order for the improvement and that the cost of the same should
be paid from special assessments upon all the real estate in the dis-
trict benefited thereby and to the extent of the benefits. Assessors
were appointed to inspect each lot and parcel of land benefited by
the improvement and to determine what part of its cost, being
$375,000, should be assessed against each lot and parcel of ground.
It was also ordered that bonds of the district for the cost of the
improvement should be issued as the law prescribes. The time limit
for contesting the assessments has expired. They have been ap-

proved by the board and as they were about to issue the bonds the controversy mentioned arose, whereupon this proceeding was brought.

The trial court determined the controversy holding that the bonds are general obligations of the district and the holders of the bonds are not restricted to the funds that may be collected from the special assessments made to pay for the improvement.

We think the case was rightly decided. The statutory provisions governing the issuance of such bonds are found in sections 3920, 3921, 3922 and 3923, of the General Statutes of 1915. To the board of directors of the district is given the power and discretion of ordering the improvement and the levy of special assessments. It may in its discretion instead of levying the entire charge in one assessment, divide them into installments for such number of years as the board may deem advisable, and issue improvement bonds therefor at an interest rate not exceeding 5 per cent per annum. There is a provision that the bonds shall not be issued until the expiration of 30 days after the assessments have been confirmed, during which time any owner of property in the district may pay the assessment in full and thereby discharge his property from the lien thereof.

The improvement is one of a general nature for the benefit of the district. The board was given express authority to make the improvement, to issue obligations for its payment, and to raise revenue to meet these obligations and the interest thereon. The bonds are to be executed by the district officers who are vested with the power and discretion to determine whether bonds shall be issued, the proportion of each annual installment, and the number of years the bonds will run and the times when each shall be paid. The district is given full control of the municipal machinery for the collection and enforcement of the assessments, a function which the holder of the bond is not authorized to perform. The act contemplates that the bonds issued by the district officers shall be acknowledgments of an indebtedness of the district. When issued they are general district obligations which the district promises to pay. While the revenue to pay them is to be derived from the assessments of the property in the district, the bonds cannot be regarded as the mere personal obligations of the individual owners of the property assessed. They are comparable to bonds issued by a city to pay for sidewalks where the revenue to pay the bonds was derived from special assessments upon the lots abutting on the improvement and

this court held that the city was primarily liable on the bonds and was bound to pay them when due, regardless of the collection of the special assessments made to raise a fund to meet the demand. (*City of Wyandotte v. Zeitz*, 21 Kan. 649.)   Other cases tending to support that view are *City of Atchison v. Byrnes*, 22 Kan. 65; *City of Atchison v. Leu*, 48 Kan. 138, 29 Pac. 467; *Atchison v. Friend*, 78 Kan. 30, 96 Pac. 348.

The bonds in question are promises of the district to pay for public improvements affecting the entire district, and it is easy to understand that they will find much readier investment and higher prices than if the holders could only look to the fund derived from special assessments.   In the absence of a provision limiting the holders of the bonds to the moneys raised by the special assessments, whether collected or not, they are not required to look to the security but may proceed against the district which issued them.   (*United States v. Saunders*, 124 Fed. 124; *Bates County, Mo., v. Wills*, 239 Fed. 785; *United States v. New Orleans*, 98 U. S. 381; *United States v. Fort Scott*, 99 U. S. 152; *Alexander v. Bailey*, 108 Neb. 717.)

It would be competent for the legislature to provide an exemption from liability by the district and that holders should have recourse only against the funds derived from special assessments, but where it is provided that bonds issued by a municipality with a promise of payment without exemption from liability, and the means of collecting the assessments are not available to the holders of the bonds, the municipalities are primarily liable and are required to pay them when due, reimbursing themselves from the levy of special assessments.   The provision that the bonds should contain a recital that they were issued under the provisions of the drainage act payable from special assessments, which should constitute a lien on the property in the district, does not make them other than district bonds, as the owners of the bonds are given no means of enforcing their collection.   More than that the recital was manifestly intended to give credit to the bonds by showing that they are secured by assessments.   It is stated that "such recital shall be relied on by any purchaser of said bonds as conclusive that the same are issued in conformity with this act, and that all conditions precedent to their issue were duly performed."   (Gen. Stat. 1915, § 3921.)

The judgment of the district court is affirmed.